**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 08-623-PCT-JAT |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| Aimee Melissa Edwards, ) | |
| Defendant. ) | |
| ) | |

Defendant in this case is charged with Second Degree Murder in violation of 18 U.S.C. § 1153 and 1111 for allegedly stabbing Lambert Caddo to death. Defendant had three conversations with law enforcement: two in close proximity in December and one in June. Defendant has requested a voluntariness hearing with respect to the December interviews. Defendant has moved to suppress her statements made in June claiming the statements were taken in violation of *Miranda*. After conducting an evidentiary hearing, the Court now rules on both motions.

**Voluntariness/December interviews**

On December 21, 2007, Defendant allegedly stabbed Mr. Caddo. Later that same day, Defendant was taken into custody by law enforcement. In the early morning hours of the next day, Defendant was questioned by law enforcement. During this questioning, Defendant made several statements that are now the subject of the request to determine voluntariness.

For a statement to be admissible against a defendant, the statement must have been voluntarily made. One part of the voluntariness inquiry is whether *Miranda* warnings were provided. *See generally United States v. Perez-Lopez*, 348 F.3d 839, 846 (9th Cir. 2003) ("*Miranda* warnings...focus on involuntary incriminating statements").[1] If adequate *Miranda* warnings were provided, the suspect can waive the rights recounted in the *Miranda* warnings and allow questioning, provided that the waiver was voluntary, knowing, and intelligent. *United States v. Bautista-Avila*, 6 F.3d 1360, 1365 (9th Cir. 1993). In other words,

> The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry. But as we said in *Berkemer v. McCarty*, 468 U.S. 420 (1984), "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Id.*, at 433, n. 20.

*Dickerson v. United States*, 530 U.S. 428, 444 (2000).

There is no required formulation of the *Miranda* warnings. *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989). However, if multiple, inconsistent versions of the warnings are given, or if incorrect or incomplete warning are given, then the *Miranda* warnings are inadequate. *Id.* at 1351-53. If the warnings are inadequate, any subsequent confession must be suppressed. *Id.* at 1353.

Turning to the December interviews in this case, prior to the questioning, Defendant was given a written advisement of her *Miranda* rights, which no one disputes was complete. The Agent also went through the rights with her orally. However, in the oral recitation of the rights, the Agent read only some, and not all, of the rights that were written on the paper. On the paper, Defendant initialed next to each right, and then signed a global waiver at the bottom of the paper.

The evidence in this case supports the conclusion that Defendant can read and understand English. Specifically, Defendant was asked when signing the global waiver at the bottom of the *Miranda* form if she could read it and she said yes. Additionally,

---

[1] The Government does not dispute that *Miranda* warnings were required before the December interviews.

- 2 -

1 Defendant wrote a note to the Agent in English.  Therefore, the Court finds that Defendant 2 could read and understand her advice of rights as written on the paper.  However, Defendant 3 argues that notwithstanding that the written waiver was complete, the fact that the oral 4 advisement was incomplete makes the *Miranda* warnings as a whole inadequate.  Thus, the 5 question posed in this case is whether, when an officer undertakes to read written *Miranda* 6 warnings to a suspect who can read, and the officer does not read every right list on the form, 7 does such failure to read each right orally to the suspect make the *Miranda* warnings 8 inadequate?

9 Preliminarily, this case is distinguishable from the cases cited by Defendant at the 10 evidentiary hearing[2] because all of those cases involved a circumstance where two different 11 versions of the warnings were given and those different versions were inconsistent.  Here, 12 the warnings given were exactly the same, the only issue is that the oral version was an 13 incomplete recitation of the written version.[3]

14 There is no requirement that an officer orally advise a suspect of her *Miranda* rights, 15 a written advisement is sufficient.  *Bell v. United States*, 382 F.2d 985, 987 (9th Cir. 1967). 16 In *Bell*, the Court stated:

> It is urged that ... [defendant's statements] should have been excluded...[because the agent] was obliged to advise [defendant] of his Miranda rights orally and not in writing.  This is absurd.  If [defendant] read and understood the written advice, then he acquired knowledge of his rights in a very satisfactory and most unimpeachable way.  There is no requirement as to the precise manner in which police communicate the required warnings to one suspected of a crime.

---

[2] *United States v. Noti*, 731 F.2d 610 (9th Cir. 1984); *Unites States v. Connell*, 869 F.2d 1349 (9th Cir. 1989); *United States v San Juan-Cruz*, 314 F.3d 384 (2002).

[3] In orally going over the statement, the Agent did not read the part that said Defendant could have an attorney with her before questioning and during questioning, and did not read the part that said if she could not afford a lawyer one would be appointed for her before questioning.  The Agent also did not read the part that said if Defendant chose to answer questions now without a lawyer, she could stop the questioning at any time until she had the opportunity to talk to a lawyer.  Doc. #33, Transcript of Hearing, pages 35-36.

1  *Id*.; *see also North Carolina v. Strobel*, 596 S.E.2d 249, 253 (N.C. App. 2004) (citing cases
2  from the Fourth, Tenth, Fifth, Third, First, and Seventh Circuits with the same holding).

3  However, the fact that there is no requirement of an oral advisement of rights does not
4  necessarily end the inquiry in this case where there was a partial oral advisement, coupled
5  with a complete written advisement. Given that initially there is no requirement of an oral
6  advisement, this Court will not conclude that if an officer undertakes to read part of the
7  written advisement aloud, a new duty to give an oral advisement arises. Thus, consistent
8  with *Bell*, this Court concludes that when there is a complete written advisement of rights,
9  there is no duty on the officer to read the entire written advisement to the suspect, even when
10 the office undertakes to read part of the advisement.

11 Accordingly, the Court concludes that there was an adequate advisement of the
12 *Miranda* rights through the writing. The Court further concludes that the evidence in this
13 case confirms that Defendant could read and understand that written advisement. Thus, the
14 Court finds that Defendant knowingly and voluntarily waived her *Miranda* rights.[4]

15 As indicated above, even after a *Miranda* waiver, the Government must establish the
16 voluntariness of a confession by a preponderance of the evidence. *United States v. Kelley*,
17 953 F.2d 562, 564 (9th Cir. 1992). A "confession is involuntary only if the police use

---

[4] At the hearing, the Government alluded to an argument that even if there were inadequate *Miranda* warnings causing the suppression of the December statements, Defendant's statements made on the cell phone to her family after the conclusion of the interview would not need to be suppressed as part of the *Miranda* inquiry because these statements were not the product of police interrogation. Because the Court has found the *Miranda* warnings to be adequate, the Court need not reach this argument. Nonetheless, should the Government choose at trial to use only the statements made during the phone call, and not any of the statements made during the December interrogation, the Court finds that those statements would not require *Miranda* warnings because they were made sua sponte by Defendant, during a telephone conversation with her family, and they were not obtained as a result of any police interrogation or questioning of any kind. In fact, such statements were the product of Defendant's own actions in seeking to speak on the telephone in a room that she knew had law enforcement people in it who could overhear Defendant's side of the conversation. *See Miranda*, 384 U.S. at 444 (warnings required only when person is in custody and subject to interrogation).

1 coercive means to undermine the suspect's ability to exercise his free will." *Pollard v.
2 Galaza*, 290 F.3d 1030, 1033 (9th Cir.), *cert. denied* 123 S.Ct. 449 (2002); *Henry v. Kernan*,
3 197 F.3d 1021, 1026 (9th Cir. 1999). Impermissible coercive activity can include lengthy
4 questioning, deprivation of food or sleep, physical threats of harm, and psychological
5 persuasion. *Kelley*, 953 F.2d at 565. When a suspect alleges psychological coercion, the
6 relevant question is whether the suspect's will was overborne when he confessed. *United
7 States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993).

In assessing voluntariness, the Court should consider the following factors:

1. the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest but before arraignment;
2. whether such defendant knew of the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,
3. whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,
4. whether or not such defendant had been advised prior to questioning of his right to assistance of counsel, and
5. whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

Having determined that the *Miranda* advisement and waiver were adequate with regard to the December interviews, the Court will now consider whether the Government has established that the statements were voluntary. Considering the factors listed in 18 U.S.C. § 3501(b), Defendant was told of the right to not make statements and that the statements would be used against her, and was told she could have counsel. Conversely, Defendant had been arrested, knew that the questioning involved the events of the preceding day, which included the stabbing, but did not know that she was being questioned about a homicide (because she did not know the victim had died), and she did not have counsel during the

1  questioning. Thus, because there are equal facts on each side, the factors under § 3501(b)
2  do not compel a conclusion regarding voluntariness.

3  Defendant argues that the length of the questioning (and the length of time prior to and
4  between questioning), the tactics used during questioning, and Defendant's use of alcohol
5  prior to the questioning, call into question the voluntariness of her answers. The questioning
6  in the first session took approximately two hours. Six hours later, the questioning resumed
7  and took approximately one hour. The Court does not find anything in this length of
8  questioning to make Defendant's statements involuntary. Defendant never requested a break
9  or suggested she needed one. There is no indication that Defendant had any concerns or
10 complaints about the conditions. Further, there is evidence that Defendant felt free to make
11 complaints because she asked that one of the officers be removed from the room and that
12 request was granted. She was also given a blanket. Finally, when she asked to make a phone
13 call, the agent permitted her to use his cell phone to make a call because the person she
14 wished to call could not accept a collect call from the police station.

15 As to Defendant's potential intoxication during the first questioning, the fact that a
16 defendant has used alcohol does not make the questioning involuntary. *See Medeiros v.*
17 *Shimoda*, 889 F.2d 818, 823 (9th Cir. 1989); *United States v. Hudgens*, 798 F.2d 1234, 1237-
18 38 (1986) (citing *California v. Beheler*, 463 U.S. 1121, 1124-25 (1982)). In this case,
19 although the Agent smelled alcohol on Defendant's breath during the first questioning, she
20 appeared to understand the questions and answered the questions appropriately and
21 coherently. Thus, on this record, there is no evidence that Defendant's use of alcohol before
22 the questioning made her statements involuntary.

23 Finally, Defendant argues that under the totality of the circumstances, the Agent's
24 manner during the questioning caused the statements to be involuntary. Defendant argues

25
26
27
28

1  that the Agent moving closer to her during the interview, using an aggressive tone, and
2  misrepresenting the evidence caused Defendant's will to be overborne.[5]

3  Considering the totality of the circumstances, the Court does not find that these tactics
4  during the questioning caused Defendant's will to be overborne. *United States v. Crawford*,
5  372 F.3d 1048, 1060 (9th Cir. 2004) (court should determine whether a defendant's will was
6  overborne based on the totality of the circumstances). First, there is no evidence that there
7  was any physical violence used or threatened in this case. *See generally United States v.
8  Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (when there is no physical violence, courts
9  should consider psychological coercion). Second, the Court does not find that the Agent
10 moving his chair closer during the interview rose to the level of psychological coercion that
11 would cause Defendant's will to be overborne. *Id.* (courts consider the defendant's age,
12 intelligence, lack of advice of constitutional rights, length of detention, repeated and
13 prolonged nature of the questioning, and the use of physical punishment such as deprivation
14 of food or sleep in determining voluntariness). Considering the factors listed in *Haswood*,
15 none of them lead to a conclusion that the moving of the chair rendered the confession
16 involuntary. Defendant is over the age of majority and has children herself, can read and
17 speak English, was advised of her rights, was detained less than one day, and was allowed
18 an extended break during questioning. Further, the Agent's undisputed testimony was that
19 he did not threaten Defendant in any way.

20 Third, the Court does not find that the Agent using an agitated tone of voice or
21 misrepresenting some of the evidence renders the confession involuntary, given the total
22 circumstances surrounding Defendant's detention and questioning. *Simmons v. Bowersox*,
23 235 F.3d 1124, 1133 (8th Cir. 2001) (officers using tactics such as deception and raised
24 voices does not automatically render a confession involuntary); *Crawford*, 372 F.3d at 1060-
25 61 (deceit by law enforcement does not make a confession involuntary). On this record, and

---

[5] Defendant did not testify at the hearing. Her counsel made the argument that her will was overborne based on the Agent's testimony regarding how he conducted the questioning.

1 again considering the *Haswood* factors articulated above, nothing in the use of these tactics 2 caused Defendant's will to be overborne. Accordingly, having considered the totality of 3 circumstances, the Court finds that Defendant's statements elicited during the December 4 interviews were voluntarily made. Thus, the December statements will not be suppressed.

### *Miranda*/**June statements**

In June, Defendant was arrested for Mr. Caddo's death. The arrest occurred in Pinetop, Arizona, following which Agent Hale drove Defendant to Phoenix to have her initial appearance. This drive took approximately three and one-half hours. During this drive, Defendant made additional statements. Defendant now moves to suppress these statements because she was not advised of her *Miranda* rights before the car ride.

*Miranda v. Arizona*, 384 U.S. 436 (1966), contains procedural safeguards to protect an individual's Fifth Amendment privilege against self-incrimination. *Miranda* warnings must be given to a person when that person is in custodial interrogation. *Id.* at 444.

Here, it is undisputed that during the June car ride Defendant was in custody. However, the Government argues that the statements made during the car ride were volunteered by Defendant, and, because there was no interrogation, no *Miranda* warnings were necessary.

The Supreme Court has defined "interrogation" for the purpose of *Miranda* safeguards as "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* (footnote omitted). Conversely, a "spontaneous" or "volunteered" confession of someone who is in custody will be admissible against that person even though no *Miranda* warnings were given. *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981).

As indicated above, *Miranda* warnings are required (for a statement to be admissible) if the actions of law enforcement, short of express questioning, would nonetheless be likely

- 8 -

1 to cause the person in custody to make an incriminating statement. *Innis*, 446 U.S. at 300-01. For example, Defendant cites to *United States v. Orso*, 266 F.3d 1030 (9th Cir. 2001) (abrogated on other grounds *Missouri v. Seibert*, 542 U.S. 600 (2004)), as a circumstance where the Court found the officer's actions elicited the incriminating statement.

In *Orso*, law enforcement arrested the defendant and had conversation with her in the vehicle while they were transporting her. *Orso*, 266 F.3d at 1032. The defendant was not given *Miranda* warnings before or during the car ride. *Id.* During the conversation in the car, one officer informed the defendant of the evidence against her, told her there was a witness who may have seen a gun, told her a range of potential sentences, told her she had been identified as the robber by the victim, and told her the name and appearance of the driver of the get-away car. *Id.* During this series of statements by the officer, Orso made several responses that were incriminating. *Id.* at 1033, n. 1.

The Court of Appeals stated:

> [The officer] engaged Orso in several minutes of detailed discussion regarding the evidence against her, the witnesses against her, and the statutory penalties for the crime of which she was suspected. Indeed, he went so far as to make up some of the evidence against her. Although [the officer] testified that he preceded his comments by admonishing her not to speak, we are persuaded that he should have known that it was reasonably likely his comments would cause her to respond. It is hard to see any purpose for the long and detailed discussion in the car, especially his false statement of the evidence against Orso, other than to elicit incriminating responses from her. [The officer] conceded as much in the evidentiary hearing before the district court; in explaining his delay in administering the *Miranda* warnings, he testified: "we wanted to speak with Miss Orso and thought that if we Mirandized her right away that she might not want to speak with us." Accordingly, we hold that Orso was under interrogation while she was in that car, and, therefore, the statements she made... [without] *Miranda* warnings must be suppressed.

*Id.* at 1033-34.

In this case, the Agent testified that he never asked any question of, nor made conversation regarding the alleged crime with Defendant. Defendant asked him several questions about how much time she was facing and the strategy of pleading guilty. The Agent advised her to consult with her lawyer and told her one would be appointed for her. The Agent further testified that all of the statements that he made about her specific situation, like what would happen that day, were in response to Defendant's questioning. The Agent

- 9 -

did not engage Defendant in any way regarding the crime charged in this case, nor encourage her to talk about the case.

Based on these facts, this case is distinguishable from *Orso*. The major distinguishing fact is that the Agent here made no statements to Defendant other than to answer direct questions, and frequently answered the direct questions by telling her to consult with her lawyer. Thus, nothing the Agent did rose to the level of interrogation as defined by *Miranda*. Therefore, the statements volunteered in the car will not be suppressed, even though no *Miranda* warnings were given at any point during the June conversation.

Based on the foregoing,

IT IS ORDERED that Defendant's request for voluntariness hearing (Doc. #15) is granted to the limited extent that the Court has conducted a voluntariness hearing and denied to the extent such request seeks to suppress Defendant's December statements as involuntarily made.

IT IS FURTHER ORDERED that Defendant's motion to suppress (Doc. #14) the June statements for having been taken without *Miranda* warnings is denied.

DATED this 21st day of October, 2008.

_____
James A. Teilborg
United States District Judge